Filed 7/10/26  P. v. Johnson CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>QUINTON DEON JOHNSON,<br><br>     Defendant and Appellant. | 2d Crim. No. B340011<br>(Super. Ct. No. BA496577)<br>(Los Angeles County) |

Caleb G. and Hasham H. were robbed at gunpoint by Quinton Deon Johnson, Ethan Wilson, and a juvenile, T.B.[1] Wilson pointed a firearm at a security guard, Keith Anderson, and he fatally shot Wilson.  Johnson was convicted of provocative act murder.

Johnson appeals from the judgment after a jury convicted

---

[1] We refer to the victims and the juvenile accomplice by their initials or first names and last initials to protect their privacy.  (Cal. Rules of Court, rule 8.90(b)(4) & (10).)

him of first degree murder (Pen. Code,[2] §§ 187, subd. (a), 189, subd. (a); count 1), three counts of attempted murder (§§ 664, subd. (a), 187, subd. (a); counts 2–4), second degree robbery (§ 211; count 5), attempted second degree robbery (§§ 664, 211; count 6), and conspiracy to commit robbery (§ 182, subd. (a)(1); count 7).  The jury also found true the allegation that Johnson personally used a firearm in the commission of counts 1 through 6.  (§ 12022.5, subd. (a).)  The trial court sentenced Johnson to state prison for 29 years to life plus a determinate term of 22 years and eight months.

Johnson contends the evidence was insufficient to establish provocative act murder or, in the alternative, to establish the murder was of the first degree.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

Caleb G., Hasham H., and Richard S. attended an event at a restaurant.  They wore visibly expensive watches and jewelry.  Phone records showed Wilson and T.B. were waiting near the restaurant.  Caleb G., Hasham H., and Richard S. left the restaurant together in a Rolls Royce convertible.  They stopped at a 7-Eleven convenience store and bought food.  A gray Audi with no license plates backed into the parking spot next to them.  When the Rolls Royce drove out of the parking lot, they did not notice that the Audi followed them.  The Rolls Royce then went to Richard S.'s home.  It was about 2:00 a.m.

Richard S. went inside his house.  Caleb G. and Hasham H. stayed outside and spoke to Richard S.'s security guard, Keith Anderson, a retired sheriff's deputy.  Anderson was armed with a

---

[2] Subsequent statutory references are to the Penal Code.

2

handgun. Caleb G. and Hasham H. were unarmed.

Caleb G. heard brakes squealing. An Audi with no plates drove up. Caleb G. screamed, "Fuck, no plates." He immediately knew he was about to get robbed and it "was going to be bad." He decided he would give up his property rather than someone getting hurt.

Johnson, Wilson, and T.B. got out of the Audi with guns drawn. They wore ski masks. Each was armed with a semiautomatic handgun. A laser device was attached to Johnson's firearm and a flashlight was attached to Wilson's firearm. Caleb G. noticed the firearms had lights attached and one had an extended magazine. Johnson, Wilson, and T.B. pointed their firearms at Caleb G. and Hasham H.

Caleb G. and Hasham H. ran to the carport. T.B. and Johnson also ran to the carport, with Wilson following. Caleb G. and Hasham H. were "cornered" in the short driveway.

T.B. pointed a firearm toward Caleb G.'s and Hasham H.'s heads and ordered them to get down. Caleb G. crouched down with his hands over his head. He told the robbers they could have what they wanted and took off his watch. Hasham H. removed his necklace.

Wilson pointed his firearm with the flashlight at Anderson. Anderson then shot Wilson in the abdomen. Wilson slouched, then shot Anderson in his abdomen.[3]

Caleb G. believed the robbers fired first based on Anderson's location and the fact his firearm was still holstered. A detective testified that based on his review of the video evidence, it appeared to him that Anderson fired first. A forensic

---

[3] The parties stipulated that Anderson died before trial of unrelated causes.

video analyst synchronized various video recordings and also opined that Anderson fired first, followed "immediately" by a shot from a robber.

There was constant rapid gunfire in "every which way." T.B. told Caleb G. to tell the security guard to stop shooting or "I'll fucking kill you."

T.B. was shot in the ankle. He fell to the ground with a firearm in one hand and a flashlight in the other, shooting rapidly. T.B. shot upwards at Hasham H., hitting him in the stomach. Caleb G. was also shot but the bullet lodged between two cell phones in his pocket. Shrapnel lodged in his knee. The robbers fled.

Police stopped the Audi with Johnson, Wilson, and T.B. inside. Wilson died at the scene.

DISCUSSION

*Provocative act murder*

Johnson contends the murder conviction was not supported by substantial evidence because he did not commit any provocative acts that exceeded the acts necessary to commit robbery until after Anderson shot Wilson. We disagree.

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Avila* (2009) 46 Cal.4th 680, 701.)

"The provocative act murder doctrine has traditionally been invoked in cases in which the perpetrator of the underlying crime instigates a gun battle, either by firing first or by otherwise

4

engaging in severe, life-threatening, and usually gun-wielding conduct, and the police, or a victim of the underlying crime, responds with privileged lethal force by shooting back and killing the perpetrator's accomplice or an innocent bystander." (*People v. Cervantes* (2001) 26 Cal.4th 860, 867.)

"A murder conviction under the provocative act doctrine thus requires proof that the defendant personally harbored the mental state of malice, and either the defendant or an accomplice intentionally committed a provocative act that proximately caused an unlawful killing. . . . Malice will be implied if the defendant commits a provocative act knowing that this conduct endangers human life and acts with conscious disregard of the danger." (*People v. Gonzalez* (2012) 54 Cal.4th 643, 655.) The qualifying provocative act cannot be committed by an accomplice who is later killed by the crime victim, but may be committed by either the defendant or a surviving accomplice. (*People v. Mejia* (2012) 211 Cal.App.4th 586, 603 & fn. 4; *People v. Briscoe* (2001) 92 Cal.App.4th 568, 582, fn. 5 (*Briscoe*).)

In a crime such as robbery that does not involve an intent to kill, "[t]he provocative act must be something beyond that necessary to commit the underlying crime." (*Briscoe*, *supra*, 92 Cal.App.4th at pp. 582–583.) "[A] central inquiry . . . is whether the defendant's conduct was sufficiently provocative of lethal resistance to support a finding of implied malice." (*Id.* at p. 583.)

*Briscoe*, *supra*, 92 Cal.App.4th 568, which affirmed a provocative act murder, is instructive. There, a robbery victim, Parovel, fatally shot the defendant's accomplice, Pina. The court held that defendant's acts of placing Parovel's girlfriend in a headlock and holding a semiautomatic pistol equipped with a laser to her head "dramatically increased the risk . . . of injury or

5

death." (*Id*. at pp. 588, 577.)  That conduct, together with defendant pistol-whipping Parovel, "went beyond those acts necessary to accomplish the underlying offense" of robbery and constituted substantial evidence of provocative act murder.  (*Id*. at p. 587.)  "One who robs another while doing no more than holding a weapon may not have committed a provocative act, while a perpetrator who brandishes a deadly weapon, puts it to the head of a robbery victim, cocks the gun or pistol-whips the victim with it may have."  (*Id*. at pp. 589–590.)

Here, substantial evidence supports provocative act murder.  Johnson and his accomplices arrived in a vehicle with no license plates and wore ski masks, which suggested a planned, organized assault.  A robbery may be accomplished with an unloaded firearm but here the robbers increased the risk of death by using loaded firearms.  (*People v. Gonzalez, supra*, 54 Cal.4th at p. 656.)  The victims could reasonably interpret the laser device attached to Johnson's firearm as a threat that he would aim and shoot.  The robbers, including Johnson, trapped the victims in a confined area.  T.B. forced two victims to their knees and threatened to kill Caleb G.  T.B.'s actions of aiming a firearm at the robbery victims' heads increased the danger to their lives.  (*Briscoe, supra*, 92 Cal.App.4th at p. 588; *People v. Kainzrants* (1996) 45 Cal.App.4th 1068, 1076–1077.)

When Wilson pointed his firearm at Anderson, Anderson shot him.  Johnson contends the evidence is insufficient because he did not engage in provocative acts until after Anderson shot Wilson.  "By necessity, the provocative act must occur before a victim may make a lethal response."  (*Briscoe, supra*, 92 Cal.App.4th at p. 584.)  But here, the jury could credit Caleb G.'s testimony that the robbers fired first.  And "there may be more

6

than one cause prompting an act of lethal resistance—that is, more than one provocative act." (*Id*. at p. 586.) Johnson and T.B. engaged in provocative acts before and contemporaneously with the fatal shooting. Substantial evidence supports the conclusion that Johnson and T.B.'s conduct contributed to Anderson's fear for his life and caused him to shoot Wilson in response.

The timing here is similar to that in *People v. Hunter* (2017) 15 Cal.App.5th 163. There, the robbers' acts were " 'all happening [at the] same time.' " (*Id*. at p. 185.) "When 'as little as five or six seconds' separate the decedent perpetrator's acts from an accomplice defendant's provocation [citation] or when, as here, the accomplice's initial act or acts 'dramatically escalated the level of violence in the encounter' [citation], the trier of fact reasonably may conclude the first perpetrator 'set . . . into motion . . . the chain reaction' leading to his or her fellow assailant's death, even if the dead assailant also engaged in provocative acts." (*Ibid*.) Here, all three robbers, including Johnson, participated in a rapid burst of gunfire. A video recording viewed by the jury shows only a few seconds elapsed from when the robbers exited their vehicle until the shooting ended.

This case is unlike *In re Joe R*. (1980) 27 Cal.3d 496 (*Joe R*.). There, the minor participated in a robbery with an adult accomplice. The accomplice pointed a gun at the robbery victim's head and ordered him into an alley. (*Id*. at p. 501.) The minor said, " 'If you don't do what he says he'll kill you.' " (*Ibid*.) The minor punched the back of the robbery victim's head, dislodging his glasses, but the victim said, "it was not severe enough for him to 'notice it.' " (*Id*. at pp. 507, 502.) The minor never displayed a firearm. (*Id*. at p. 501.) The victim struggled with the accomplice, disarmed him, and shot and killed him. (*Id*. at p.

502.)

The majority in *Joe R.* concluded substantial evidence did not support a provocative act murder.  (*Joe R., supra*, 27 Cal.3d at p. 508.)  The court relied exclusively on the minor's conduct and not on "the 'provocative conduct' of the accomplice who was killed."  (*Id.* at p. 506, fn. 5.)  The court stated the minor did "no more than participate actively in an armed robbery.  His repeated admonitions to do what [his accomplice] said or 'he'll kill you' were directed toward safe completion of the underlying felony." (*Id.* at pp. 507–508.)  The court reasoned that moving the victim a short distance to an alley was "solely to lessen the risk that the robbery would be observed."  (*Id.* at pp. 508, 507.)

Unlike the minor in *Joe R.*, Johnson displayed a loaded firearm with a laser device, wore a ski mask, and shot at the victims who were cornered in the carport.  Johnson and T.B.'s acts went beyond that necessary for an armed robbery of Caleb G. and Hasham H., who immediately surrendered their property. Substantial evidence supports Johnson's conviction for provocative act murder.

*First degree*

Johnson also contends the evidence was insufficient to support first degree murder.  We are not persuaded.  As he acknowledges, binding precedent compels the contrary conclusion.

A murder is of the first degree if it "is committed in the perpetration of . . . robbery."  (§ 189, subd. (a).)  As we concluded in *People v. Baker-Riley* (2012) 207 Cal.App.4th 631, provocative act murder is of the first degree if committed in the course of a robbery.  (*Id.* at pp. 635–636, citing *People v. Sanchez* (2001) 26 Cal.4th 834, 852; *Pizano v. Superior Court* (1978) 21 Cal.3d 128,

8

139–140, fn. 4; and *People v. Gilbert* (1965) 63 Cal.2d 690, 705, judgment vacated on other grounds, *Gilbert v. California* (1967) 388 U.S. 263.)  We are bound to follow this Supreme Court precedent.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


BALTODANO, J.


We concur:


YEGAN, Acting P. J.


CODY, J.

9

Ronald S. Coen, Judge

Superior Court County of Los Angeles

_____

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.